## HOOPER *vs.* THE HUDSON RIVER FIRE INSURANCE COMPANY.

A policy of insurance was " on the stock of looking glasses, looking glass plates," &c. of H. & B. " contained in the brick building situate," &c. During the running of the policy the property of H. & B. then in the building was sold upon execution, and purchased by the plaintiff. The goods were delivered to him by the sheriff, and the secretary of the insurance company signed a consent that the interest of H. & B. in the policy might be assigned to the plaintiff, which was done, accordingly. The goods purchased by the plaintiff corresponded with those described in the policy. They remained in the brick building until they were consumed by fire. *Held,* that the policy ceased to be effective upon the goods purchased by the plaintiff at the sheriff's sale, from the time they were sold. But that the insurance was not upon such goods only as were in the building at the date of the policy. That it was upon personal property of the assured and their assigns, of the description contained in the policy, which might be in the building at any time during the running of the policy.

Accordingly *held,* that the policy, although inoperative as to the property sold at the sheriff's sale, was not dead, but had sufficient vitality to protect any goods of the same description which might subsequently be purchased by the assured and placed in the same building, so long as it might be occupied by them; and that when the policy was assigned to the plaintiff it was an operative instrument.

*Held also,* that the effect of the assignment to the plaintiff was to put him in the same situation, and to confer upon him the same rights as to the future, as if he had been the original assured.

THIS was a motion to set aside a nonsuit, and for a new trial. The action was upon a policy of insurance. The facts, and the legal questions arising thereon, are stated in the opinion of the court.

*J. A. Lott*, for the plaintiff.

*J. O. Mott*, for the defendant.

*By the Court*, S. B. STRONG, J. The policy was "on the stock of looking glasses, looking glass plates, frames, machines, tools and materials for the manufacture of the same" of Hooper & Brother "contained in the brick building situate No. 333 Pearl-street in the city of New-York," originally for one year from the 18th of March 1851, but subsequently continued for another year commencing on the 18th March, 1852. On the 19th of June, 1852, the personal property of Hooper & Brother then in the brick building mentioned in the policy was sold under two executions, the principal one being at the suit of the plaintiff, and were purchased by him. They were delivered to him by the sheriff on the 21st of June, when he paid sufficient money to satisfy the execution in favor of another party, and the residue was credited on that issued in his own behalf. On the same day the secretary of the insurance company signed a consent that the interest of the original assured in the policy might be assigned to the plaintiff, and it was assigned to him on the 30th day of the same month. The goods purchased by the plaintiff corresponded with those described in the policy. They remained in the brick building therein mentioned until they were consumed by a fire which destroyed the building on the night of the first of July, 1852. The question is whether the defendants are responsible to the plaintiff, for the loss.

I am inclined to think that the policy ceased to be effective upon the goods which were sold to the plaintiff or to any other person for him, immediately upon their being struck off at the sheriff's sale. It does not appear that any thing further was to be done to vest the title to the property in the purchaser. Delivery

Hooper *v.* Hudson River Fire Ins. Co.

is not necesary for that purpose, nor was any bill of sale requisite. If the policy could cover no other goods than those which were then sold, there was an end to its vitality, and the subsequent assignment of that instrument to the plaintiff was of a nullity, and conferred no right upon him.

But the insurance in this case was not upon such goods only as were in the building at the time when the policy was issued or continued. It was upon personal property of the assured and their assigns, of the description contained in the policy, which might be in such building at any time during the period mentioned in such policy, and in the certificate of its continuance. That is universally so, whether the goods are intended for sale or use; otherwise the insurance, and particularly of goods in a store, would be of but little advantage, and the premium would be almost uselessly spent. If then all the looking glasses, and materials to manufacture them, which were in the building when the insurance was effected should be sold and others manufactured or purchased by the assured and placed in the building, the policy would survive and attach to the newly acquired property. So if the machinery had been worn out or even sold, and other machinery for a similar purpose had been substituted, that would have been protected by the insurance. I do not suppose that there can be any doubt as to either. The policy, although ineffective as to the property sold at the sheriff's sale, was not dead, but had sufficient vitality to protect any goods of the same description which might subsequently be purchased by the assured and placed in the same building, so long as it might be occupied by them. It might also cover the same articles, should they be repurchased by them, or restored to them on a settlement with their creditors. When therefore it was assigned to the plaintiff it was an operative instrument.

The effect of the assignment to the plaintiff with the consent of the insurers was to put him in the same situation, and confer upon him the same rights as to the future, as if he had been the original assured. I did not understand the defendant's counsel as resisting this conclusion if the policy, when transferred, was still alive. The policy then, when assigned, covered any

goods of the plaintiff in the building referred to, answering the characteristics in other particulars specified in the policy. Such were those destroyed by the fire on the first of July, and the plaintiff is therefore entitled to recover their value, so far as the sum specified in the policy may go.

The nonsuit should be set aside, and a new trial ordered, costs to abide the event of the suit.

[DUTCHESS GENERAL TERM, July 4, 1853. *Barculo, Brown* and *S. B. Strong,* Justices.]